IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **MARQUIS GERMAN, #Y28304,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| vs. | ) Case No. 3:22-cv-01352-SMY |
| | ) |
| **ROB JEFFREYS,** | ) |
| **DEBBIE KNAUER,** | ) |
| **DEANA KINK,** | ) |
| **C. HALE,** | ) |
| **W. STEWART,** | ) |
| **A WRIGHT,** | ) |
| **C. BROWN, and** | ) |
| **DR. JOHN DOE,** | ) |
| | ) |
| **Defendants.** | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Marquis German, an inmate of the Illinois Department of Corrections, filed the instant lawsuit pursuant to 42 U.S.C. § 1983 alleging deprivations of his constitutional rights at Pinckneyville Correctional Center. This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 1): Plaintiff developed a pain in his left ear and his hearing became muffled on September 1, 2021. He saw Nurse Stewart the following day and informed her of the pain and loss of hearing. He told her he believed there was a bug in his ear. Without looking in his ear, she told him he would be placed on the treatment

line to have his ear flushed. She also prescribed ear drops and ibuprofen. He submitted another sick call request on September 8, 2021 because he was suffering from pain in his ear, headaches, and hearing loss. He saw Nurse Stewart the following day. Once again, she stated he would be scheduled for an ear flush the next day. The ear flush did not occur. He put in a third request slip on September 12, 2021. He saw Nurse Stewart and she once again told him he would be scheduled for an ear flush the next day. Finally, on September 15, 2021, Nurse Wright performed an ear flush without examining his ear first. The flush pushed the insect further into his ear canal. He was then 100% deaf in that ear and the pain level increased from a 5 to a 9 out of 10. At that point the nurse looked and saw an object in his ear.

Plaintiff saw Dr. John Doe on September 17, 2021. The doctor confirmed there was a foreign object lodged in Plaintiff's ear. Plaintiff told the doctor he had been stating that for three weeks. The doctor responded that they are not equipped with the tools to remove it. When he asked why he was not referred for urgent care by an Ear, Nose and Throat specialist (ENT), the doctor responded "prison doesn't work like that. The doctor indicated that Plaintiff would be sent to an offsite ENT immediately to remove the object and assess any long-term damage to his hearing. Two days later, Plaintiff filed an emergency grievance asking to be taken to an outside facility to have the object removed from his ear. The Warden granted emergency review of the grievance.

Plaintiff was sent to an ENT specialist on October 11, 2021, who removed a roach from his ear. He told the ENT specialist that his hearing barely improved. He could hear sounds but he was essentially deaf. He also had residual pain.

Plaintiff had a follow-up visit with Dr. John Doe and Nurse Wright on October 14, 2021. He informed the doctor that his hearing was significantly damaged and asked if he would have a

hearing test. He was told he was on the waiting list. Later, when he received a copy of his medical records, he discovered that the doctor did not note his complaints of hearing loss, pain, or headaches. Nor did the doctor note that he was to receive a hearing test.

Plaintiff submitted an emergency grievance on November 5, 2021 requesting a hearing test. He submitted a request slip on November 10, 2021 inquiring about a hearing test. He saw Nurse Wright on sick call line on November 11, 2021 and informed her of his hearing loss, ear pain, and headaches. However she wrote "0 complaints voiced" in his medical record. Plaintiff submitted another request for sick call due to headaches on November 19, 2021 and was seen the next day and given Tylenol. His request for a hearing test was finally submitted on November 23, 2021.

Plaintiff received responses to his grievances in December 2021. He believes there was "conspiratorial deliberate indifference" because it took two months to get a response to one grievance while it only took two weeks to get a response to another grievance. He contends that taking forty-five days to review grievances shows "systemic negligence and deliberate indifference on the part [of] defendants Hale, Kink, Knauer, and Jeffreys." Even though the Warden determined emergency review of the grievance was warranted, Hale delayed the review.

Hale took almost eighty days to respond to a grievance submitted in December 2021 regarding Plaintiff's request for a hearing test and a hearing aid. Additionally, she lied in her response stating he had refused a scheduled hearing test. Plaintiff wrote a letter to the Administrative Review Board ("ARB") about Hale's "deliberate indifference, negligence, and blatant lies." Defendant Knauer erroneously dated her response prior to the date of the letter and checked the box "no justification provided for additional consideration," which is a blatant lie. Knauer ignored his appeal as part of IDOC's systemic, fraudulent grievance procedure.

Brown issued a memo six months after Plaintiff submitted dozens of requests and

grievances for a hearing test that said he had received a hearing aid on June 23, 2021. However, his hearing was fine until September 2021 when his ear became infected due to the roach inside it. Brown also erroneously stated that Plaintiff could not go to the HCU because he was in segregation and would have to be handcuffed behind his bank. Shortly after he sent Brown a request slip highlighting her contradictions and again requesting a hearing test, he was transferred to Menard as obvious retaliation. He did not receive a disciplinary ticket or any logical written explanation for this higher security reclassification and transfer.

The Complaint includes a "Claims for Relief" section in which Plaintiff asserts a claim against Dr. John Doe for not adequately supervising, managing and training the medical and subordinate staff, including Stewart, Wright, and Brown. He also asserts Hale and Brown colluded by falsifying documents to cover up egregious deliberate indifference, negligence and cruel and unusual punishment by the defendant nurses and Dr. John Doe.

Based on the allegations in the Complaint, the Court designates the following claims in this *pro se* action:[1]

Count 1: Eighth Amendment claim against Stewart, Wright, and Dr. John Doe for exhibiting deliberate indifference to Plaintiff's serious medical needs with regard to the foreign object in his left ear and the resulting pain.

Count 2: Eighth Amendment claim against Wright, Dr. John Doe, and Brown for exhibiting deliberate indifference to Plaintiff's serious medical needs with regard to ear pain, headaches, and hearing loss after the removal of the foreign object from Plaintiff's left ear.

Count 3: First, Eighth, and/or Fourteenth Amendment claim against Jeffreys, Knauer, Kink, and Hale for delaying responses to, denying, and/or mooting Plaintiff's grievances.

---

[1] Any claim that is mentioned in the Complaint but not addressed in this Order is dismissed without prejudice as inadequately pled under the *Twombly* pleading standard. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

4

| | |
|---|---|
| Count 4: | Conspiracy to violate Plaintiff's Eighth Amendment rights against Hale and Brown for colluding to falsify documents to cover-up medical staff's deliberate indifference. |
| Count 5: | Eighth Amendment and/or failure to supervisor/train claim against Dr. John Doe for failing to supervise, manage, and/or train Stewart, Wright, and Brown resulting in constitutionally deficient medical care for Plaintiff. |
| Count 6: | First Amendment claim against Brown for Plaintiff's retaliatory transfer in response to his complaints about not receiving a hearing test. |
| Count 7: | State law medical negligence claim against Stewart, Wright, Brown, and Dr. John Doe. |

## Discussion

### Counts 1 and 2

Prison officials and medical staff violate the Eighth Amendment's prohibition on cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state a claim, a prisoner must allege facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* The allegations in the Complaint are sufficient to proceed against Stewart in Count 1 and Wright, Dr. John Doe, and Brown in Count 2. However, Plaintiff fails to state a claim in Count 1 against Wright and Dr. John Doe. Plaintiff only saw Wright on one occasion when she performed an ear flush. At most, she may have been negligent in her performance of the ear flush, which does not support a claim for deliberate indifference. *See Johnson v. Doughty*, 433 F.3d 1001, 1013 (7th Cir. 2006) ("medical malpractice, negligence, or even gross negligence does not equate to deliberate indifference"). Plaintiff also only saw Dr. John Doe once while he had a bug in his ear and Dr. Doe sent him to an ENT. There is nothing to suggest deliberate indifference by Dr. Doe prior to the removal of the

bug. As such, Wright and Doe will be dismissed from Count 1.

### Count 3

The First Amendment right to petition the government for redress includes the right of access to the courts. *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). Section 1983 is a tort statute, so Plaintiff must have suffered a harm to have a cognizable claim. *Id*. Plaintiff does not allege that the denial or mooting of his grievances infringed on his access to the courts. "Because he is currently exercising his right to petition the government for redress of grievances through this lawsuit, he has not been harmed." *Id*. Further, "[p]rison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by person who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). Finally, "[p]rison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance." *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017).

For these reasons, Plaintiff fails to state a First, Eighth, or Fourteenth Amendment claim against Jeffreys, Knauer, Kink, and Hale for delaying responses to, denying and/or mooting his grievances. Count 3 will be dismissed.

### Count 4

Although the Seventh Circuit has recognized a § 1983 claim where a defendant tries to cover-up unlawful conduct, the basis for this type of claim is the denial of a plaintiff's right of access to the courts. *Vasquez v. Hernandez*, 60 F.3d 325, 329 (7th Cir.1995). A cover-up leads to a denial of access to the courts only where the cover-up was to some extent successful. *Id*. In other words, when there are no allegations indicating that a defendant's cover-up prevented a plaintiff

from pursuing a tort action or that the value of such an action was reduced by the cover-up, there is no basis for a § 1983 action because there has been no injury beyond the underlying tort. *See Jellis v. Harrington,* No. 15-CV-00630-NJR, 2015 WL 4127177, at *4 (S.D. Ill. July 7, 2015).

Here, Plaintiff has not alleged that his right of access to the courts has been denied or impeded in any way by the alleged cover-up. Absent allegations that that the cover-up thwarted Plaintiff's attempts to bring a lawsuit or somehow reduced the value of the suit, there is no viable § 1983 conspiracy claim. *Vasquez*, 60 F.3d at 329. Accordingly, the conspiracy claim in Count 4 will be dismissed without prejudice.

**Count 5**

Failure to supervise, train, and manage subordinate staff evokes the grounds under which a ***municipality*** may be liable in a civil rights claim. *See City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Here, Plaintiff asserts that Dr. John Doe failed to properly supervise, train, and manage subordinate medical staff regarding the proper handling of his requests for medical assistance. The doctrine of *respondeat superior* does not apply to actions filed under § 1983, and therefore, supervisors cannot be held liable for the errors of their subordinates. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (citations omitted). Nor does § 1983 allow for a supervisor's liability based on what his staff did or failed to do. *See Taylor v. Ways*, 999 F.3d 478, 493–94 (7th Cir. 2021). Therefore, Count 5 will be dismissed without prejudice.

**Count 6**

Prison officials may not retaliate against inmates for filing grievances, exercising First Amendment rights, or otherwise complaining about their conditions of confinement. *See, e.g., Gomez v. Randle,* 680 F.3d 859, 866 (7th Cir. 2012). To state a retaliation claim, a plaintiff must allege that "(1) he engaged in activity protected by the First Amendment; (2) he suffered a

deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). To state a retaliatory transfer claim, plaintiff must set forth a chronology of events from which retaliation may be inferred. *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir.1987). Because of the difficulty of proving intent at the time of a Complaint, it is sufficient for Plaintiff to allege a sequence of events that supports an inference of retaliation. *Id*. at 108. Accordingly, Plaintiff may proceed on the retaliation claim in Count 6 against Brown.

### Count 7

Plaintiff seeks to bring a state law medical negligence claim against Stewart, Wright, and Dr. John Doe. Where a district court has original jurisdiction over a civil action such as a § 1983 claim, it also has supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a), so long as the state claims "derive from a common nucleus of operative fact" with the original federal claims. *Wisconsin v. Ho-Chunk Nation,* 512 F.3d 921, 936 (7th Cir. 2008). Because Plaintiff's allegations of medical negligence derive from the same facts as his Eighth Amendment deliberate indifference claim, this Court will exercise supplemental jurisdiction over the claim. An Illinois medical negligence claim requires the plaintiff to show: (1) the applicable standard of care; (2) the defendant breached the standard of care and was negligent; and (3) and the breach was a proximate cause of the plaintiff's injury. *Chambers v Igram*, 858 F.2d 351, 355 (7th Cir. 1988). Plaintiff's allegations are sufficient to proceed on a medical negligence claim against Stewart, Wright, Brown, and Dr. John Doe.[2]

---

[2] The Court notes that Plaintiff has not provided the affidavit and medical report required under Illinois state law, *i.e.*, 735 ILCS § 5/2-622. If he intends to proceed with this claim, Plaintiff must file an affidavit stating that "there is a reasonable and meritorious cause" for litigation of the medical malpractice claim, along with a physician's report in support of the affidavit. *See Young v. United States*, 942 F.3d 349 (7th Cir. 2019). His failure to do so is not dispositive of his claim at this point. *Id.* However, Plaintiff must

8

### Identification of Doe Defendant

The Warden of Pinckneyville Correctional Center, in his or her official capacity, shall respond to discovery aimed at identifying the Doe defendant. Guidelines for discovery will be set by the undersigned. Once the name of the Doe defendant is discovered, Plaintiff shall file a motion to substitute the newly identified defendant in place of the generic designations in the case caption and throughout the Complaint.

### Disposition

Following preliminary review of the Complaint under 28 U.S.C. § 1915A, these claims will proceed: Count 1 against Stewart; Count 2 against Wright, Dr. John Doe, and Brown; Count 6 against Brown; and Count 7 against Stewart, Wright, Brown, and Dr. John Doe. The Clerk of Court is **DIRECTED** to add to the docket the Warden of Pinckneyville Correctional Center, in his or her official capacity, for purposes of responding to discovery aimed at identifying the Doe defendant.

The following claims and Defendants are **DISMISSED without prejudice** for failure to state a claim for relief: Count 1 against Wright and Dr. John Doe; Counts 3, 4, and 5; and Defendants Rob Jeffreys, Debbie Knauer, DeAna Kink, and C. Hale. The Clerk of Court is **DIRECTED** to terminate Jeffreys, Knauer, Kink, and Hale as defendants.

The Clerk of Court shall prepare for W. Stewart, A. Wright, C. Brown, the Warden of Pinckneyville Correctional Center (official capacity only), and once identified, Dr. John Doe: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as

---

comply with the requirements set forth in 735 ILCS § 5/2-622 before summary judgment on the merits of the case.

identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Service shall not be made on John Doe until such time as Plaintiff has identified him by name in a properly filed motion for substitution of party. Plaintiff is **ADVISED** that it is his responsibility to provide the Court with the name and service address for this individual.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order.  Because the Warden is only in the case for purposes of responding to discovery aimed at identifying the Doe Defendant, he does not need to file a responsive pleading.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of

Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

**DATED:  October 18, 2022**

*s/ Staci M. Yandle*
**STACI M. YANDLE**
**U.S. District Judge**

## Notice to Plaintiff

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve the Defendants with a copy of your Complaint.  After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint.  It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer or other responsive pleading, but it is entirely possible that it will take **90 days** or more.  When Defendants have filed their Answer(s), the Court will enter a Scheduling and Discovery Order containing important information on deadlines, discovery, and procedures. **Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff should not submit any evidence to the Court at this time, unless specifically directed to do so.**