IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| MARQUIS GERMAN, #Y28304, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-cv-1352-SMY |
| | ) |
| WHITNEY STEWART, | ) |
| ALLYSA WRIGHT, | ) |
| CHRISTINE BROWN, and | ) |
| DR. PERCY MYERS, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

This matter is before the Court on the motions for summary judgment filed by Defendants Stewart, Wright, and Myers (Doc. 57) and Defendant Brown (Doc. 64), asserting that Plaintiff Marquis German failed to properly exhaust his administrative remedies before filing suit. Defendants Stewart, Wright, and Myers also seek sanctions against Plaintiff for failing to respond to discovery requests including Requests to Admit (Doc. 57). Plaintiff filed a response in opposition to both motions (Doc. 67). For the following reasons, the motion filed by Stewart, Wright, and Myers will be denied, and Brown's motion will be granted.

## BACKGROUND

Plaintiff filed this this *pro se* civil action pursuant to 42 U.S.C. § 1983 for alleged violations of his constitutional rights while he was an inmate of the Illinois Department of Corrections ("IDOC"). He has since been released from custody (Docs. 73, 74). Plaintiff claims that while he was incarcerated at Pinckneyville Correctional Center, Defendants failed to properly treat his serious pain and hearing loss caused by a cockroach that had become lodged in his ear canal, and

1

that Defendant Brown transferred him to Menard Correctional Center in retaliation for his complaints (Docs. 1, 9).

Following preliminary review of the Complaint under 28 U.S.C. § 1915A, Plaintiff was allowed to proceed on the following claims (Doc. 9, pp. 5-9):

> Count 1: Eighth Amendment claim against Stewart for exhibiting deliberate indifference to Plaintiff's serious medical needs with regard to the foreign object in his left ear and the resulting pain.
>
> Count 2: Eighth Amendment claim against Wright, Dr. Percy Myers,[1] and Brown for exhibiting deliberate indifference to Plaintiff's serious medical needs with regard to ear pain, headaches, and hearing loss after the removal of the foreign object from Plaintiff's left ear.
>
> Count 6: First Amendment claim against Brown for Plaintiff's retaliatory transfer in response to his complaints about not receiving a hearing test.
>
> Count 7: State law medical negligence claim against Stewart, Wright, Brown, and Dr. Percy Myers.

Defendants Stewart, Wright, and Myers contend that none of these grievances served to exhaust Plaintiff's claims against them because Plaintiff did not include any of their names or factual details sufficient to identify them (Doc. 58, p. 6). They further argue that because Plaintiff failed to respond to the Requests for Admission propounded on March 16, 2023 (Doc. 58-1, pp. 11-14), he is deemed to have admitted that he failed to name or identify Wright or Stewart in any of his grievances and admitted that he failed to exhaust his claims against Wright and Stewart (Doc. 58, pp. 6-8). They also argue that the ARB never made a final determination on Grievance No. 3115-09-21 because it was determined to be moot, and Grievance No. 3620-11-21 was likewise unexhausted because the ARB noted the issue was previously addressed in their response finding Grievance No. 3115-09-21 moot (Doc. 58, pp. 8-9).

---

[1] Plaintiff identified the Doctor as a "John Doe" in the Complaint and later substituted Dr. Percy Myers as the Defendant (Docs. 43, 45).

2

## **LEGAL STANDARDS**

### **Summary Judgment - Exhaustion**

Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Pursuant to the Prison Litigation Reform Act ("PLRA"), a prisoner may not bring a lawsuit about prison conditions unless and until he has exhausted all available administrative remedies. 42 U.S.C. § 1997e(a); *Pavey v. Conley*, 544 F.3d 739, 740 (7th Cir. 2008). "The exhaustion requirement is an affirmative defense, which the defendants bear the burden of proving." *Pavey v. Conley*, 663 F.3d 899, 903 (7th Cir. 2011). For a prisoner to properly exhaust his administrative remedies, he or she must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Id.* at 1024. Exhaustion must be fully completed before the prisoner files suit; a case filed while a grievance appeal is still ongoing is premature and must be dismissed without prejudice. *Chambers v. Sood*, 956 F.3d 979, 984 (7th Cir. 2020); *See* also *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). Because Plaintiff was an IDOC inmate when he filed this action, he was required to follow the grievance process set forth in the Illinois Administrative Code. 20 ILL. ADMIN. CODE § 504.800, *et seq*. (2017).

Under IDOC's procedure, an inmate initiates a grievance with his counselor, and he may then submit his grievance to a grievance officer at his facility, and to the CAO at his facility. "A grievance must be filed...within 60 days after the discovery of the incident, occurrence or problem

that gives rise to the grievance." 20 ILL. ADMIN. CODE § 504.810(a). A grievance must "contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint." 20 ILL. ADMIN. CODE § 504.810(c). If the prisoner does not know a person's name, he "must include as much descriptive information about the individual as possible." *Id.*

If an inmate is unsatisfied with the outcome at the facility, he must appeal to the ARB within 30 days. 20 ILL. ADMIN. CODE § 504.850(a). The grievance procedures further allow for an inmate to file an emergency grievance; to do so, the inmate must forward the grievance directly to the CAO who may "[determine] that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the offender." 20 ILL. ADMIN. CODE § 504.840(a). After such a determination, processing of the grievance is expedited, as is any appeal. 20 ILL. ADMIN. CODE § 504.840(b); § 504.850(f).

## **DISCUSSION**

The parties identify three relevant grievances filed by Plaintiff regarding his claims:

### *Grievance No. 3115-09-21, filed September 19, 2021*

In this Grievance, which was deemed an emergency, Plaintiff stated that he put in a sick call request on September 1, 2021 because he felt like something was inside his left ear, he couldn't hear, and it was slightly painful (Doc. 1, pp. 24-25). He was told he would "immediately" be sent for an ear flush. A week went by, but Plaintiff was not called for treatment. On September 8, 2021, he submitted another sick call because his ear was worse. Again, he was told an ear flush would be given that day or the next, but he was never called. Plaintiff went to sick call again on September 12, 2021 in severe pain, but nothing was done. On September 15, 2021, two weeks after first informing a nurse of the problem, Plaintiff was taken to health care for the ear flush. The

4

procedure did not remove the object but pushed it deeper into Plaintiff's ear, causing extreme pain and complete loss of hearing. Plaintiff saw the doctor on September 17, 2021; the doctor saw the foreign object and told Plaintiff he would be sent to an outside doctor for it to be removed. As of the date of the grievance, Plaintiff had not been sent for that treatment (Doc. 1, pp. 24-25; Doc. 67, pp. 6-7).

When the grievance officer responded on December 3, 2021, the grievance was ruled moot because Plaintiff was seen by the ear specialist on October 11, 2021, and the foreign object was removed (Doc. 1, pp. 20-21; Doc. 67, pp. 8-9). Plaintiff's appeal to the Administrative Review Board ("ARB") was ruled moot for the same reason (Doc. 1, p. 22; Doc. 67, p. 11).

### *Grievance No. 3620-11-21, filed November 5, 2021*

In this Grievance, which was deemed an emergency, Plaintiff complained that he had to suffer for weeks in excruciating pain with hearing loss after seeing the doctor on September 17, 2021, before he was taken to the outside doctor on Columbus Day for removal of a bug from his left ear. Plaintiff filed grievances seeking to have his cell sprayed for the bug infestation, but nothing was done. Plaintiff states that he should have been sent to an outside doctor immediately, and still suffers from hearing loss (Doc. 1, pp. 26-27; Doc. 67, pp. 13-14). Plaintiff requested monetary compensation.

This grievance was denied at the institutional level on December 17, 2021 (Doc. 1, pp. 30-31; Doc. 67, pp. 15-16). Plaintiff appealed to the ARB, pointing out inaccuracies in the grievance officer's summary of his medical treatment and cell moves (Doc. 1, pp. 28-29; Doc. 67, pp. 17-18). The ARB denied further review, noting it previously addressed the issue in Grievance No. 3115-09-21 (Doc. 1, p. 32; Doc. 67, p. 19).

*Grievance No. 3940-12-21, filed December 6, 2021*

In this Grievance, which was deemed an emergency, Plaintiff sought an immediate hearing test, claiming he had been deaf in his left ear ever since the bug was removed in October (Doc. 1, pp. 33-34; Doc. 67, pp. 20-21).

The grievance was denied on February 24, 2022, noting that Plaintiff missed two hearing test appointments in December and would be rescheduled (Doc. 1, p. 35; Doc. 67, p. 22). The ARB denied Plaintiff's appeal for the same reasons (Doc. 1, p. 36; Doc. 67, p. 23).

**Defendants Stewart, Wright, and Myers' Motion for Summary Judgment (Doc. 57)[2]**

Defendants Stewart, Wright, and Myers argue: (1) that none of these grievances served to exhaust Plaintiff's claims against them because Plaintiff did not include their names or factual details sufficient to identify them; (2) that because Plaintiff failed to respond to Requests for Admission propounded on March 16, 2023 (Doc. 58-1, pp. 11-14), he is deemed to have admitted that he failed to name or identify Wright or Stewart in any of his grievances and admitted that he failed to exhaust his claims against them; and (3) that the ARB never made a final determination on Grievance No. 3115-09-21 because it was determined to be moot, and Grievance No. 3620-11-21 was likewise unexhausted because the ARB noted the issue was previously addressed in their response finding Grievance No. 3115-09-21 moot.

In response, Plaintiff contends that his grievances included specific dates and facts sufficient to identify the defendants who saw him for health care. Plaintiff's response and his original Complaint include medical records naming Stewart as the nurse he consulted on September 2, 2021 and September 9, 2021, and showing that Stewart signed the documentation of

---

[2] For the reasons discussed below, the Court concludes that it is not necessary to hold a hearing on the exhaustion issue raised by Defendants Stewart, Wright, and Myers.

his September 17, 2021 visit to the doctor as noted in Grievance No. 3115-09-21 and 3620-11-21 (Doc. 1, pp. 39, 41, 43; Doc. 67, pp. 24, 26, 28). Additionally, Plaintiff asserts that Dr. Myers' identity is not in question because he was the only doctor at the prison at the time of his September and October 2021 visits and appears in his medical records.

Plaintiff's medical records, which Defendants received along with the Complaint, showed that Wright, Stewart, and Myers were the individuals who saw Plaintiff for his health care visits on the dates described in his grievances. Plaintiff's grievances provided detail on each date that he consulted a nurse or doctor, and what occurred at each visit. A review of these records and the grievances conclusively establishes that these defendants were the nurses and doctor who saw Plaintiff in the course of his attempts to secure treatment for his ear ailment. *See Maddox v. Love,* 655 F.3d 709, 721-22 (7th Cir. 2011) (prisoner's grievance did not identify the defendants, but prison administrators knew who was responsible and addressed grievance on its merits, thus "the grievance has served its function of alerting the state and inviting corrective action, and defendants cannot rely on the failure to exhaust defense."); *accord Bakaturski v. Brookhart*, No. 21-cv-00014-GCS, 2022 WL 1093633, at *3-4 (S.D. Ill. Apr. 12, 2022) (finding prisoner properly exhausted claims because details in grievances against "healthcare" and "head of medical" were sufficient for prison officials to identify the defendant).

Plaintiff's grievances and medical records provided sufficient information for Pinckneyville officials to address each grievance on its merits (Doc. 1, pp. 20-22; 30-31; 35). Grievance No. 3620-11-21 was denied based on the health care administrator's response detailing Plaintiff's visits to nursing staff and the doctor before Plaintiff's ENT referral (Doc. 1, pp. 30-31). Likewise, the health care administrator responded to Grievance No. 3940-12-21 regarding the scheduling of Plaintiff's requested hearing test (Doc. 1, pp. 35). As in *Maddox*, Plaintiff's

grievances served their function because prison administrators knew who to investigate and the grievances were addressed on their merits. *See Maddox*, 655 F.3d at 721-22. The ARB likewise disposed of the grievances on their merits. Consequently, Stewart, Wright, and Myers cannot now rely on a procedural deficiency to claim non-exhaustion, where prison administrators and the ARB did not recognize the purported deficiency when addressing Plaintiff's grievances. *Id.*

Further, Defendants' argument that two of Plaintiff's grievances were "not given final determination" and thus were not exhausted, is without merit. Plaintiff timely appealed the disposition of his grievances to the ARB. The ARB ruled that Grievance No. 3115-09-21 was moot; this was a final determination of the matter, on which the Director concurred (Doc. 1, p. 22). There was no further process for Plaintiff to exhaust after that result. The same is true for Grievance No. 3620-11-21, which the ARB concluded it previously addressed in Grievance No. 3115-09-21 (Doc. 1, p. 32). That determination was the final step for Plaintiff; he had no remaining avenue for appeal. This does not end the matter, however.

On March 16, 2023, Wright and Stewart served Plaintiff with Requests to Admit that he "did not name or provide any identifying information regarding" Wright or Stewart in his grievances, and to "Admit that [Plaintiff] failed to exhaust [his] administrative remedies by failing to name or identify [Wright or Stewart] in a grievance." (Doc. 58, p. 7; Doc. 58-1, p. 12). They assert that Plaintiff never responded to their Requests and is therefore deemed to have admitted these matters.

As discussed above, Plaintiff's technical error in failing to identify Wright or Stewart by name in his grievances is of no consequence. Prison officials addressed the grievances on their merits, and the grievances contained dates and sufficient information from Plaintiff's medical records to identify these defendants. Moreover, the request that Plaintiff admit that he failed to

8

exhaust his administrative remedies by failing to name or identify Wright or Stewart improperly sought an admission to an ultimate legal conclusion. Significantly, the prison and ARB's records, show that the grievances were considered and addressed through each step of the grievance procedure. As such, and consistent with the Court's preference for adjudication of cases on the merits, the Court concludes that Plaintiff's deemed admissions to Wright's and Stewart's requests are not dispositive of the issue of exhaustion. *See Snyder v. Barry Realty, Inc.*, 60 F. App'x 613, 614 (7th Cir. 2003) ("the law prefers that cases be resolved on their merits"); *Williams v. Republic Airways Holdings Inc.*, No. 21-CV-00469-TWP-MJD, 2022 WL 3357912, at *1-2 (S.D. Ind. Aug. 15, 2022) (allowing withdrawal of deemed admissions on motion of plaintiff, to promote the presentation of the merits).

The Court does not condone Plaintiff's neglect of his duty to respond to these Defendants' discovery; he also did not answer their interrogatories or request for documents (Doc. 58-1). Defendants further report that Plaintiff failed to provide the initial disclosures as ordered by this Court (Docs. 40, 51).³ However, Wright and Stewart make no showing that they were prejudiced by Plaintiff's lack of response. Defendants had all the relevant grievance documents and medical records in their possession from the time they were served with Plaintiff's Complaint (Doc. 1). These documents from Plaintiff are duplicates of the relevant records Defendants submitted later with their motion for summary judgment and sanctions.

*Pro se* litigants are expected to comply with Court rules and Orders, and their refusal to do so may subject them to sanctions. That said, the dismissal of this entire case, as Wright and Stewart request, is not warranted.

---

³ Plaintiff attempted to file his disclosures with the Clerk of Court, but his filing was rejected because discovery materials are not to be filed (Doc. 51). Defendants maintain Plaintiff did not follow up by sending the material to them.

For these reasons, the motion for summary judgment for failure to exhaust administrative remedies (Doc. 57) will be denied as to Defendants Myers, Stewart, and Wright. Defendants Stewart and Wright's motion for sanctions[4] (Doc. 57) will also be denied.

### Defendant Brown's Motion for Summary Judgment (Doc. 64)[5]

Defendant Brown argues that Plaintiff failed to exhaust his claims against her because the three grievances fail to mention her by name or describe any allegations against her, and there is no record that Plaintiff submitted any other grievance raising his claims against her. Plaintiff contends that Brown, as the Health Care Unit Administrator ("HCUA"), responded to his grievances and wrote memos outlining the care he allegedly received.

Brown correctly notes that Plaintiff never identified her by name in any of his grievances and never included his retaliatory transfer claim in a grievance. Because Plaintiff clearly did not exhaust his administrative remedies on the retaliation claim in Count 6 against Brown, it will be dismissed. That leaves two remaining claims against Brown: the deliberate indifference claim in Count 2, and the medical negligence claim in Count 7.

Unlike with medical provider Defendants Wright, Stewart, and Myers, who were identifiable using the dates, descriptions of visits, and medical records Plaintiff provided, the documents do not identify Brown as one of the individuals that Plaintiff saw for his health care visits. Two documents were authored by Brown as the HCUA: a March 16, 2022 inquiry to Plaintiff regarding a hearing aid he purportedly received in June 2021 (Doc. 1, p. 51), and a March 28, 2022 response to Plaintiff's request for a hearing test, noting that he was on the list and would

---

[4] Defendant Myers had not yet been identified at the time discovery was served on Plaintiff. The discovery requests were made only on behalf of Wright and Stewart (Docs. 58-1, 58-2).

[5] For the reasons discussed below, the Court concludes that it is not necessary to hold a hearing on the exhaustion issue raised by Defendant Brown.

be tested when he was released from restrictive housing (Doc. 1, p. 52).  Both communications were made long after Plaintiff submitted the grievances discussed herein.

While it appears that Brown was the author of the "per HCUA" responses that were incorporated into the disposition of Plaintiff's later two grievances (Doc. 1, pp. 31, 35), this shows only that Brown was involved in reviewing Plaintiff's grievances, not that she had any role in providing the care (or lack thereof) he complained about in the grievances.  That is not enough for liability to attach, nor does it serve to exhaust Plaintiff's medical deliberate indifference claims against Brown.  *Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) (official who merely reviews a grievance cannot be held liable for conduct described in grievance).  Accordingly, Brown's motion for summary judgment (Doc. 64) will be granted.

## DISPOSITION

Defendants Stewart, Wright, and Myers' Motion for Summary Judgment (Doc. 57) is **DENIED**.  The portion of this motion seeking sanctions for Plaintiff's failure to respond to Stewart's and Wright's discovery (Doc. 57) is also **DENIED**.

Defendant Brown's Motion for Summary Judgment on the Issue of Exhaustion of Administrative Remedies (Doc. 64) is **GRANTED**.  Defendant Brown and Count 6 are **DISMISSED** from this action without prejudice.[6]

This case will proceed on the following claims: Count 1 against Stewart (Eighth Amendment deliberate indifference); Count 2 against Wright and Myers (Eighth Amendment deliberate indifference); and Count 7 against Stewart, Wright and Myers (medical negligence).

The matter of exhaustion of administrative remedies now being resolved, the stay on merits

---

[6] Brown's Motion to Dismiss for Want of Prosecution (Doc. 73) is **DENIED** as Plaintiff updated his address soon after the motion was filed (Doc. 74).

11

discovery is **LIFTED** and the parties can proceed with discovery on the merits of Plaintiff's remaining claims. The Court will enter a separate scheduling order to set forth discovery and dispositive motion deadlines.

  **IT IS SO ORDERED.**

  **DATED: March 13, 2024**

                *s/ Staci M. Yandle*
                **STACI M. YANDLE**
                **United States District Judge**